IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,            )
                                     )
              Plaintiff,              )
                                     )
v.                                   )   No. 09-10111-WEB
                                     )
EUSEBIO GUERRERO-SANCHEZ,            )
                                     )
              Defendant.              )
_____)

**Memorandum and Order**

This matter came before the court on December 11, 2009, for a hearing on the defendant's motion to suppress evidence. The court orally denied the motion at the conclusion of the hearing. This written memorandum will set supplement the court's oral ruling.

The court finds the following facts from the evidence presented at the hearing. Officer Eduardo Padron of the Wichita Police Department was on patrol in his car on Kellogg Street (U.S. Hwy 54) in Wichita at about 3:30 p.m. on September 9, 2009, when he noticed a blue Ford F-150 pickup truck traveling eastbound slightly ahead of him. He saw the truck signal and change lanes. The truck then moved back to the other lane without signaling, which was a violation of Kansas traffic laws. *See* K.S.A. § 8-1548 (no person shall move right or left on a roadway without giving an appropriate signal). Based on this observed violation, the court finds that the initial stop of the vehicle was reasonable under the Fourth Amendment. *See United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (traffic stop is justified at its inception if officer has reasonable suspicion that motorist has violated traffic laws of the jurisdiction).

Padron is trained and certified as a police K-9 "drug dog" handler and had his dog with

him at the time.  The dog is trained and certified in the detection of several drugs, including heroin.

Padron followed the truck and initiated a traffic stop a short distance down the road.  He saw the truck was licensed in Washington state and he called in to check on the license.  Padron approached the truck and spoke to the driver, defendant Eusebio Guerrero-Sanchez, who was the sole occupant of the vehicle.  Padron immediately ascertained that the driver primarily spoke Spanish, so Officer Padron conversed with him in Spanish.  Padron's first language is Spanish, and the two had no trouble communicating.  Padron explained that he stopped the vehicle for failing to signal, and he asked to see Guerrero's driver's license and insurance information.  The defendant produced the license, and as he did so Padron noticed that the defendant's hand was shaking.  He saw that the defendant had a twitch on the side of his face and appeared to be extremely nervous.  Padron also noticed that there were two cell phones in the truck.  He testified that he knows from his training and experience that drug couriers sometimes carry more than one cell phone.  Padron asked the defendant about his travel plans, and the defendant said he was traveling from Washington to North Carolina.  He said he was on vacation.  Padron looked but could not see any luggage in the vehicle.  The defendant said he planned to be gone from Washington for four or five days.  He said if he found work in Carolina he would probably take a job there.  When Padron pointed out that he had no clothes or other items, the defendant said he would drive back to Washington and then back to North Carolina if he got a job.

Padron was suspicious for several reasons, including the defendant's unusual travel plans.  Highway 54 appeared to be an indirect route for a person traveling from Washington to North Carolina, and it was about a 2-day drive each way.  The defendant indicated he was only

2

on vacation for four or five days. Padron was also suspicious because of the defendant's excessive nervousness and his possession of two cell phones. Based on the totality of circumstances, including the defendant's unusual travel plans, the possession of two cell phones, and his excessive nervousness, the court concludes that the officer had a reasonable suspicion of criminal activity that justified a brief detention to investigate the purpose of defendant's trip and whether it was a cover for some illicit purpose such as drug trafficking. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (court looks at the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing"). In making this assessment, the court "accord[s] appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009).

Padron asked about employment, and the defendant said he worked at a nursery in Washington. He subsequently produced a pay stub with his employer's phone number on it. Padron called the nursery and spoke to someone who verified that the defendant worked there but said he had left about a month ago to go to Mexico for a family emergency, and had not answered or returned the nursery's calls trying to reach him. The defendant had not told Padron about any of this before, and it appeared to contradict what the defendant said about his trip. Padron then contacted EPIC (El Paso Intelligence Center), which keeps data on vehicles and persons entering the U.S. Padron was informed that the vehicle had come from Mexico into the U.S. in California three days previously, having been driven by someone named "Sergio." Padron also had EPIC do an NCIC check, which showed no warrants or history on defendant Guerrero.

Padron had the defendant get out of the vehicle so they could talk without Padron being exposed to traffic. Padron told the defendant he did not think he was being truthful, pointing out that the officer had found out the vehicle recently came into the U.S. in California. The defendant changed his story at that point, saying he had been in Mexico because of family and had come through California. The reasonable suspicion of the officer was clearly heightened at that point, as the statements now being made by the defendant contradicted what he told the officer previously. When the officer expressed some disbelief, the defendant insisted that he was an honest and hardworking man and did not have anything to hide. The defendant told the officer that he could search the truck for himself and see. Padron testified that at some point in this discussion, he returned the defendant's license and other documents to him. Padron also spoke with Officer Gumm, another officer who arrived on the scene, and then clarified with the defendant that he was willing to let the officers search the truck. The defendant again insisted that the officer could search. Based on the evidence presented at the hearing, the court concludes that the defendant voluntarily gave consent for a search. The officer did nothing more than question the inconsistencies in the defendant's story. There was no improper duress or coercion placed on the defendant and the totality of circumstances shows that his consent to search was voluntary. *See United States v. Soto*, 988 F.3d 1548, 1557 (10th Cir. 1993) (government must show there was no duress or coercion, that the consent was unequivocal and specific, and was freely and intelligently given). In fact, the first suggestion of a search was made by the defendant, not the officer. The court finds the consent to be voluntary, moreover, even if defendant was being detained by the officer for investigation at the time of the consent. *See United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999) (consent to search may be voluntary

even though the consenting party is being detained at the time consent is given). The court notes that the defendant and Padron communicated with each other in Spanish, and there is no suggestion of any misunderstanding on the defendant's part. Moreover, as noted below, the evidence showed that the defendant had also consented to a search of his vehicle earlier in the day, which bolsters the court's conclusion that his consent to search in this instance was voluntary.

Officer Gumm began to search the truck. He found a container with "Bondo" in it, a substance used in auto-body work, along with some sandpaper and a screwdriver. Padron knew from experience that Bondo was used by drug couriers to make trap doors or false compartments in vehicles. Padron worked his dog around the vehicle. It twice alerted in the area of the front passenger wheel well or engine compartment. At that point, the officers decided to move the vehicle to a nearby parking lot due to safety concerns and to allow for a more thorough search. The court concludes that after the positive alert by Padron's dog, the officers had probable cause to believe that the truck contained illegal drugs. *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) (probable cause may exist where a trained drug dog alerts to the odor of an illegal substance in the vehicle). Officer Chad Cooper, another WPD officer trained as a dog handler who was called by Padron, ran another dog around the truck. Cooper's dog likewise alerted to the front quarter panel area of the vehicle.

The officers continued the search for a fairly extended period but could not locate any drugs or compartments. Eventually Officer Cooper saw the back of a rounded black item that he could not identify. The officers subsequently removed the cowling from the front windshield area and removed the front passenger side fender. After they did so, they could see a

5

compartment containing packages wrapped in black plastic material. The packages were later tested and found to contain heroin.

The defense presented evidence that earlier in the day of September 8, 2009, at around 10:40 a.m., the defendant had been stopped in his truck near Guymon, Oklahoma, by Oklahoma law enforcement officer Christopher Bird. The defendant voluntarily consented to a search, and the officer conducted a dog sniff of the vehicle. The dog alerted to the passenger side front fender, but a subsequent search by the officer turned up nothing, and the defendant was released. The defense suggested that perhaps Oklahoma authorities prompted Officer Padron to make the stop in Wichita later in the day, but Padron's testimony refuted that suggestion. There was no credible evidence that the Wichita stop was based on anything other than Padron's observation of a traffic infraction by the defendant.

Although the search of the vehicle took a rather extended period of time, that was due primarily to the way the drugs were effectively hidden in the vehicle. The court finds that the search of the truck and the detention of the defendant to perform that search were both reasonable under the circumstances. The evidence shows that the defendant was lawfully stopped for a traffic infraction, the officer had a reasonable suspicion of criminal activity that justified an investigation, the defendant voluntarily consented to a search, and the subsequent search (including the dog sniffs) provided probable cause to believe that the vehicle contained drugs. Once the officers had probable cause, their dismantling of a portion of the truck to locate the drugs was reasonable. *See e.g., United States v. Manzano*, 135 Fed.Appx. 193, 198, 2005 WL 1415571 (10th Cir. 2005). Two dogs had alerted on that portion of the truck, and the officers had a reasonable belief that drugs were hidden in interior parts or compartments of the

6

vehicle. The court concludes that the search and seizure were reasonable under the Fourth Amendment.

At the suppression hearing, counsel agreed that any issue concerning the voluntariness of statements made by the defendant after his arrest was not pertinent to the motion to suppress. Accordingly, no evidence was presented on that issue.

*Conclusion*.

Defendant's Motion to Suppress Evidence (Doc. 18) is DENIED. IT IS SO ORDERED this   15th   Day of December, 2009, at Wichita, Ks.

                                                  s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge